### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SHERIF ALBERT DDS, P.C., d/b/a ESPLANADE DENTAL CARE,  ALBERT DENTAL PROFESSIONALS, P.C., d/b/a ATRIUM FAMILY DENTAL and ALBERT AND ALBERT DENTAL HEALTH ASSOCIATES, LTD., d/b/a BRUSH PEDIATRIC DENTISTRY, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. |
| THE CINCINNATI INSURANCE COMPANIES, THE CINCINNATI INSURANCE COMPANY, THE CINCINNATI INDEMNITY  COMPANY, THE CINCINNATI CASUALTY COMPANY, and THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, | ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## COMPLAINT AT LAW

Plaintiffs, SHERIF ALBERT DDS, P.C,  d/b/a ESPLANADE DENTAL CARE, ALBERT DENTAL PROFESSIONALS, P.C., d/b/a ATRIUM FAMILY DENTAL, and ALBERT  AND  ALBERT DENTAL HEALTH ASSOCIATES, LTD., d/b/a BRUSH PEDIATRIC  DENTISTRY,  (hereinafter collectively Plaintiffs), through their attorneys, CLIFFORD LAW OFFICES, P.C., complaining of the Defendants, THE CINCINNATI INSURANCE  COMPANIES, THE  CINCINNATI  INSURANCE  COMPANY,  THE CINCINNATI INDEMNITY  COMPANY, THE CINCINNATI CASUALTY COMPANY, and THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY,  (hereinafter collectively  CINCINNATI INSURANCE), allege as follows:

## INTRODUCTION

1

1.      Plaintiffs are the owners and operators of dental practice businesses in Downers Grove, New Lenox and Hinsdale Illinois. Plaintiffs are owned and operated by licensed dentists and provide dental services to their patients. Plaintiffs were required by orders issued by the State of Illinois to cease most operations, through no fault of their own, as part of the State's efforts to slow the spread of the COVID-19 global pandemic. The closures mandated by these orders presented an existential threat to Plaintiffs' businesses that employ numerous Illinois residents. To protect their businesses from situations like these, which threaten the livelihood of Plaintiffs' employees due to factors wholly outside of their control, Plaintiffs obtained business interruption insurance from CINCINNATI INSURANCE. In blatant breach of its insurance obligations that it voluntarily undertook in exchange for Plaintiffs' premium payments, CINCINNATI INSURANCE has denied Plaintiffs' claims arising from the State-ordered interruption of their businesses.

2.      As a result, Plaintiffs now bring this action against CINCINNATI INSURANCE for its failure to provide insurance coverage for the business income Plaintiffs lost because of the ongoing Coronavirus (COVID-19) pandemic and its failure to honor its obligations under the commercial businessowners insurance policy issued to Plaintiffs, which provides coverage for losses incurred due to a necessary suspension of their operations, including when their businesses are forced to close due to government action.

3.      On March 15, 2020, during the term of the policy issued by CINCINNATI INSURANCE to Plaintiffs, Illinois Governor Pritzker issued an order first closing all restaurants and bars to the public in an effort to address the ongoing COVID-19 pandemic. A few days later, on March 20, 2020, Governor Pritzker ordered all "non-essential businesses" to close.

2

4.     On March 15, 2020, the Illinois State Dental Society issued a recommendation that dentists cease all in-person dental treatment except for dental emergencies. The organization also noted that it was supporting to the fullest extent the closure orders issued by Governor Pritzker.

5.     Additionally, on March 16, 2020, the American Dental Association issued a recommendation to dentists nationwide that elective procedures be postponed and that dentists provide only emergency dental care.

6.     On April 1, 2020, the American Dental Association reiterated that dentists should keep their offices closed to all except for urgent and emergency procedures until April 30, 2020, at the earliest, noting that their position was consistent with the recommendation of the U.S. Centers for Disease Control and Prevention. The nation's largest dental association further explained  that the rate of COVID-19 transmissions was on the rise in most states, that asymptomatic patients cannot be assumed to be COVID-19 free, and that no dentist could be assured that they were treating a non-infected individual.

7.     On April 14, 2020, Governor Pritzker, in conjunction with Dr. Ngozi O. Ezike, Director of the Illinois Department of Public Health, issued Additional Guidance for Preventing Spread of COVID-19 For the Oral Health Community and Dental Practices, which mandated closure of dental offices for routine dental care and restricted dental services to emergency and urgent care as determined on a case-by-case basis.

8.     The March 15th and March 20th orders, and the April 14th directive, hereinafter are collectively referred to as the "Closure Orders."

9.     As a result of the Closure Orders, Plaintiffs were forced  to halt ordinary operations, resulting in substantial lost revenues.

3

10.    Despite CINCINNATI INSURANCE's express promise in its policy to cover Plaintiffs' business interruption losses due to a necessary suspension of operations and/or when the government forces a closure, CINCINNATI INSURANCE has issued blanket denials to Plaintiffs and its other similarly-situated insureds for any losses related to the Closure Orders without first conducting any meaningful coverage investigation, let alone a "reasonable investigation based on all available information" as required under Illinois law.

11.    To the extent CINCINNATI INSURANCE has provided any reason to Plaintiffs for its categorical assertion that Plaintiffs' losses are not covered, it is based on the assertion that the actual or alleged presence of the coronavirus, which led to the Closure Orders that prohibited Plaintiffs from operating their businesses, does not constitute direct physical loss.

12.    CINCINNATI INSURANCE's conclusory statement that the actual or alleged presence of a substance like COVID-19 does not result in physical loss to Plaintiffs' property is contrary to the law in Illinois. Illinois courts have consistently held that the presence of a dangerous substance in a property constitutes "physical loss or damage." *See, e.g.*, *Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Int'l Ins. Co.*, 720 N.E.2d 622, 625–26 (Ill. Ct. App. 1999), as modified on denial of reh'g (Dec. 3, 1999).

13.    Furthermore, CINCINNATI INSURANCE'S statement that Plaintiffs' claim does not involve direct physical loss to property at their premises is contrary to the common definitions of loss, and fails to recognize that the COVID-19 virus and closure  orders caused Plaintiffs  to experience a loss of the use and availability of their business premises for extended time periods.

14.    Moreover, unlike many commercial property policies available in the market, the policies sold by CINCINNATI INSURANCE do not include an exclusion for loss caused by a

virus. Thus, Plaintiffs reasonably expected that the insurance they purchased from CINCINNATI INSURANCE included coverage for property loss and damage, and business interruption losses, caused by viruses like the COVID-19 coronavirus.

15.     If CINCINNATI INSURANCE had wanted to exclude pandemic-related losses under the Plaintiffs' policy—as many other insurers have done in other policies—it easily could have attempted to do so on the front-end with an express exclusion. Instead, CINCINNATI INSURANCE waited until after it collected Plaintiffs' premiums, and after a pandemic and the resulting Closure Orders caused catastrophic business losses to Plaintiffs, to try to limit its exposure on the back-end through its erroneous assertion that the presence of the coronavirus does not cause physical loss and, therefore, is not a covered cause of loss under its policies.

16.     The fact that the insurance industry has created specific exclusions for pandemic-related losses under similar commercial property policies undermines CINCINNATI INSURANCE's assertion that the presence of a virus, like the coronavirus, does not cause physical loss or damage to property. Indeed, if a virus could never result in a physical loss to property, there would be no need for such an exclusion. Moreover, CINCINNATI INSURANCE's assertion ignores the fact that their policies promised to provide coverage for losses incurred due to government actions taken in response to dangerous physical conditions, even if those dangerous physical conditions cause damage to property at locations other than those insured under their policies.

17.     Thus, CINCINNATI INSURANCE's wholesale, cursory coverage denial is arbitrary and unreasonable, and inconsistent with the facts and plain language of the policies it issued. These denials appear to be driven by CINCINNATI'S INSURANCE's desire to preempt its own financial exposure to the economic fallout resulting from the COVID-19 crisis, rather

than to initiate, as CINCINNATI INSURANCE is obligated to do, a full and fair investigation of the claims and a careful review of the policies they sold to Plaintiffs in exchange for valuable premiums.

18.     As a result of CINCINNATI INSURANCE's wrongful denial of coverage, Plaintiffs file this action for a declaratory judgment establishing that it is entitled to receive the benefit of the insurance coverage it purchased, for indemnification of the business losses it has sustained, for breach of contract, and for bad faith claims handling under 215 ILCS 5/155.

19.     Plaintiff, SHERIF ALBERT, DDS, P.C., d/b/a ESPLANADE DENTAL CARE, is an Illinois professional corporation with Illinois citizenship, and its principal place of business in Downers Grove, Illinois, that is owned and operated by SHERIF ALBERT, DDS.  Plaintiff ALBERT DENTAL PROFESSIONALS, P.C., d/b/a ATRIUM FAMILY DENTAL, is an Illinois professional corporation with Illinois citizenship and its principal place of business in New Lenox, Illinois, that is owned by SHERIF ALBERT, DDS.  Plaintiff ALBERT AND ALBERT DENTAL HEALTH ASSOCIATES, LTD., d/b/a BRUSH PEDIATRIC DENTISTRY is an Illinois professional corporation with Illinois citizenship and its principal place of business in Hinsdale, Illinois, that is owned by Mira Albert, DDS.

20.     Plaintiffs provide dental care, treatment and services to members of the public. During the relevant times herein Plaintiffs had policies of insurance providing coverage for property damage, business interruption and related losses pursuant to policy number ECP 022 69 42 issued to SHERIF ALBERT, DDS, P.C., d/b/a ESPLANADE DENTAL CARE and ALBERT DENTAL PROFESSIONALS, P.C., d/b/a ATRIUM FAMILY DENTAL by Defendant Cincinnati Insurance and pursuant to policy number ECP 024 93 62 issued to ALBERT AND ALBERT DENTAL HEALTH AND ASSOCIATES, LTD., d/b/a BRUSH

6

PEDIATRIC DENTISTRY by Defendant CINCINNATI INSURANCE.

21.    Defendants are Ohio corporations with their principal place of business in Fairfield, Ohio, and are engaged in the business of selling and providing policies of insurance coverage to commercial entities, including providers of professional dental services such as Plaintiffs, in and throughout the state of Illinois and elsewhere.

## JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

23.    This Court has personal jurisdiction over CINCINNATI INSURANCE pursuant to the Illinois "long arm statute," 735 ILCS 5/2-209, because CINCINNATI INSURANCE has submitted to jurisdiction in this state by: (a) transacting business in Illinois; (b) contracting to insure a person, property or risk located within Illinois at the time of contracting; and (c) making a contract substantially connected with Illinois. See 735 ILCS 5/2-209(1),(4),(7). In addition, CINCINNATI INSURANCE exercises substantial, systematic and continuous contacts with Illinois by doing business in Illinois, serving insureds in Illinois, seeking additional business in Illinois and subjecting itself to the authority of the Illinois Department of Insurance.

24.    This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties as to their respective rights and obligations under the policies with respect to the loss of business arising from the closure orders, civil authority and other events detailed herein.

25.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within the

Northern District of Illinois.

### PLAINTIFFS ESPLANADE and ATRIUM FACTUAL ALLEGATIONS

26.   Plaintiff incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1 through 25 above.

### A.   THE CINCINNATI INSURANCE POLICY

27.   In exchange for substantial premiums, CINCINNATI INSURANCE sold a commercial property insurance policy Number ECP 022 69 42, ("the Policy") promising to indemnify Plaintiffs for losses resulting from occurrences, including the "necessary suspension" of business operations at any insured location caused by or resulting from a covered cause of loss or action of Civil Authority during the relevant time period.

28.   The Policy was issued to Plaintiffs at their  principal place of business in Illinois.

29.   Many of the relevant provisions setting forth the scope of coverage for business interruption losses are contained in forms FM 101 05 16 and FA 213 05 16 providing Business Income and Extra Expense Coverage. A copy of the Policy is attached here as "**Exhibit A**." (*Id.* at p. 34, et seq..).

30.   The Policy is an all-risk policy that provides broad coverage for losses caused by any cause unless expressly excluded.

31.   The Policy does not exclude losses from viruses or pandemics. Thus, the all-risk Policy purchased by Plaintiffs covers losses caused by viruses, such as COVID-19.

32.   The policy contains Building and Personal Property Coverage Form (FM 101 05 16) which provides in Section A that Defendant "will pay for direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss."  (*Id.* at p. 38).

33.   Under the policy definitions, "Loss means accidental physical loss or accidental

physical damage." (*Id.* at p. 71).

34.   The policy further provides that "Covered Causes of Loss means direct 'loss' unless the loss is excluded or limited in this Coverage Part. (*Id.* at p.  40). None of the exclusions or limitations are applicable to Plaintiffs' claims.

35.   As part of Cincinnati Insurance's Building and Personal Property Coverage Form FM 101 05 16, Defendant provided plaintiffs with Coverage Extensions which included coverage for Business Income and Extra Expense losses. (*Id.* at p. 53). Cincinnati Insurance agreed that "We will pay for the actual loss of 'Business Income' and 'Rental Value' you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.' The 'suspension' must be caused by direct 'loss' to property at a 'premises' caused by or resulting from any Covered Cause of Loss. (*Id.* at p. 53).

36.   With respect to business interruption losses, "suspension" means: "The slowdown or cessation of your business activities"; and  "That a part or all of the 'premises' is rendered untenantable." (*Id.* at p. 75).

37.   'Operations' means:  a.  Your business activities occurring at the 'premises'; and b. The tenantability of the 'premises', if coverage for 'Business Income' including 'Rental Value' or 'Rental Value' applies. (*Id.* at p. 73).

38.   "Business Income" is defined in relevant part under the Policy as "Net Income (net profit or loss before income taxes) that would have been earned or incurred" if the suspension of operations had not occurred,  and "Continuing normal operating expenses sustained, including payroll." (*Id.* at p. 73).

39.   CINCINNATI INSURANCE also promised to pay Extra Expense Plaintiffs incur during the period of restoration to "avoid or minimize  the 'suspension' of business and to

continue 'operations'" at the premises or at temporary or replacement locations. (*Id.* at p. 54).

40.     "Extra Expense" is defined in relevant part under the Policy as "necessary expenses you sustain during the 'period of restoration' that you would not have sustained if there had been no direct 'loss' to property caused by or resulting from a Covered Cause of Loss." (*Id.* at p. 54).

41.     The CINCINNATI INSURANCE Policy also includes "Civil Authority" coverage, pursuant to which CINCINNATI INSURANCE promised to "pay for the actual loss of 'Business Income' and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the 'premises,'" due to damage to property, other than covered property at a 'premises', caused by a Covered Cause of Loss. (*Id.* at p. 54).

**The Plaintiffs' Losses Due to the Coronavirus Pandemic and the Closure Orders.**

42.     On March 11, 2020, the World Health Organization declared that the emerging threat from the novel coronavirus—otherwise known as COVID-19—constituted a global pandemic.

43.     Emerging research on the virus and reports from the CDC indicate that the COVID-19 strains physically infect and can stay alive on surfaces for at least 17 days, a characteristic that renders property exposed to the contagion potentially unsafe and dangerous. Other research indicates that the virus may linger on surfaces for up to four weeks in low temperatures.

44.     In response to the pandemic, and the spread of the coronavirus in Chicago and throughout Illinois, Governor Pritzker issued the aforementioned closure orders on March 15, 2020, March 20, 2020 and April 14, 2020 requiring that all bars, restaurants, and other essential businesses, including dental offices other than for emergency procedures, close and discontinue

10

servicing the public.

45.    At the time the aforesaid closure orders were issued Plaintiffs were actively engaged in providing dental care, treatment and services from their facilities in Downers Grove and New Lenox, Illinois.

46.    The continuous presence of the coronavirus amongst the public, and on or around Plaintiffs' premises, rendered the premises unsafe and unfit for their intended use and therefore, caused both physical loss and physical damage under the Policy.

47.    The Governor's closure orders and the recommendations of the standard-setting American Dental Association and Illinois State Dental Society were issued in direct response to these dangerous risks and dangerous physical conditions, and prohibited the public, other than for an emergency, from accessing Plaintiffs' dental offices, thereby causing a deprivation of the use of their business premises, the necessary suspension of their operations, and triggering the Business Income Loss and Civil Authority coverage under the Policy.

48.    The continued enforcement of the aforementioned Governor's closure orders and the recommendations of the national and local professional organizations governing the practice of dentistry were necessitated by the ongoing and increasing presence of the coronavirus amongst the public, including Plaintiffs' patient base, and on and around the Plaintiffs' property and premises, thereby causing a direct physical loss to the premises' utility and availability for normal dental office operations.

49.    The aforementioned government orders and dental organization proclamations prohibited the Plaintiffs from providing virtually all of their ordinary and customary dental services, and prohibited the public from accessing Plaintiffs' offices, thereby causing the necessary suspension of their operations and triggering the Business Income Loss and Civil

11

Authority coverage under the Policy.

50.    As a result of the Closure Orders, and the practice standards implemented by the dental organizations, Plaintiffs have suffered substantial Business Income losses and incurred Extra Expense. The covered losses incurred by Plaintiffs and owed under the Policy increased every day, and are expected to total substantial sums of money.

51.    Following the implementation of the Closure Orders and rules precluding all but emergency dental care, Plaintiffs submitted a claim to CINCINNATI INSURANCE requesting coverage for their business interruption losses promised under the Policy.

52.    On or about May 28, 2020, CINCINNATI INSURANCE denied Plaintiffs' claim.

## COUNT I: DECLARATORY JUDGMENT

53.    Plaintiffs incorporate by reference, as if fully set forth herein, the facts set forth in paragraphs 1 through 52 above.

54.    The Policy is an insurance contract under which CINCINNATI INSURANCE was paid premiums in exchange for its promise to pay Plaintiffs' losses for claims covered by the Policy, such as business losses incurred as a result of the government orders and dental practice standards  forcing them to close their businesses.

55.    Plaintiffs have complied with all applicable provisions of the Policy, including payment of the premiums in exchange for coverage under the Policy.

56.    CINCINNATI INSURANCE has arbitrarily and without justification refused to reimburse Plaintiffs for any losses incurred by Plaintiffs in connection with the covered business losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

12

57.    An actual case or controversy exists regarding Plaintiffs' rights and CINCINNATI INSURANCE'S obligations under the Policy to reimburse Plaintiffs for the full amount of losses incurred by Plaintiffs in connection with the necessary suspension of their dental businesses stemming from the COVID-19 pandemic.

58. Pursuant to 28 U.S.C. § 2201, Plaintiffs seek a declaratory judgment from this Court declaring the following:

> (a) Plaintiffs' losses incurred in connection with the Closure Orders and related dental organization proclamations and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the Policy;

> (b) CINCINNATI INSURANCE has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiffs' losses by issuing blanket coverage denials without conducting a proper claim investigation as required under Illinois law; and

> (c) CINCINNATI INSURANCE is obligated to pay Plaintiffs for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders and dental organization proclamations during the applicable indemnity period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT II: BREACH OF CONTRACT

59.    Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1 through 58 above.

60.    The Policy is an insurance contract under which CINCINNATI INSURANCE was paid premiums in exchange for its promise to pay Plaintiffs' losses for claims covered by the Policy, such as business losses incurred as a result of the government orders forcing them to close their businesses.

61.    Plaintiffs have complied with all applicable provisions of the Policy, including payment of the premiums in exchange for coverage under the Policy, and yet CINCINNATI

INSURANCE has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

62.    By denying coverage for any business losses incurred by Plaintiffs in connection with the Closure Orders and the COVID-19 pandemic, CINCINNATI INSURANCE has breached its coverage obligations under the Policy.

63.    As a result of CINCINNATI INSURANCE's breaches of the Policy, Plaintiffs have sustained substantial damages for which CINCINNATI INSURANCE is liable, in an amount to be established at trial.

## COUNT III: STATUTORY PENALTY FOR BAD FAITH DENIAL OF INSURANCE UNDER 215 ILCS 5/155

64.    Plaintiffs incorporate by reference, as if fully set forth herein, the facts set forth in paragraphs 1 through 63 above.

65.    Upon receipt of the Plaintiffs' Claims, CINCINNATI INSURANCE denied Plaintiffs' claim without conducting an adequate investigation, let alone a "reasonable investigation based on all available information" as required under Illinois law. See 215 ILCS 5/154.6.

66.    CINCINNATI INSURANCE's denials were unreasonable and constitute "improper claims practices" under Illinois law—namely CINCINNATI INSURANCE's  (1) refusals to pay Plaintiffs' claim without conducting a reasonable investigation based on all available information and (2) failure to provide reasonable and accurate explanations of the bases for  its denial. See 215 ILCS 5/154.6 (h), (n).

67.    CINCINNATI INSURANCE has offered no valid reason for its denial and failed to raise any bona fide disputes as to whether the claim was covered by the Policy.

68.    Therefore, pursuant to 215 ILCS 5/155, Plaintiffs request that, in addition to

14

entering a judgment in favor of Plaintiffs and against CINCINNATI INSURANCE for the amount owed under the Policy at the time of judgment, the Court enter a judgment in favor of Plaintiffs and against CINCINNATI INSURANCE for an amount equal to the greater of: (1) 60% of the amount which the trier of fact finds that Plaintiffs are entitled to recover under the Policy, exclusive of costs; and (2) $60,000. See 215 ILCS 5/155.

69.    Plaintiffs further request that the Court enter a judgment in favor of Plaintiffs and against CINCINNATI INSURANCE in an amount equal to the attorneys' fees and costs incurred by Plaintiffs for the prosecution of this coverage action against CINCINNATI INSURANCE, which amount will be proved at or after trial, pursuant to 215 ILCS 5/155.

### PLAINTIFF BRUSH PEDIATRIC DENTISTRY FACTUAL ALLEGATIONS

70.    Plaintiff incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1 through 25 above.

### THE CINCINNATI INSURANCE POLICY

71.    In exchange for substantial premiums, CINCINNATI INSURANCE sold a commercial property insurance policy, Number ECP 024 93 62/EBA 024 93 62, ("the Policy") promising to indemnify Plaintiff for losses resulting from occurrences, including the "necessary suspension" of business operations at any insured location caused by or resulting from a covered cause of loss or action of Civil Authority during the relevant time period.

72.    The Policy was issued to Plaintiff at their  principal place of business in Illinois.

73.    Many of the relevant provisions setting forth the scope of coverage for business interruption losses are contained in forms FM 101 04 04 and FA 213 04 04 providing Business Income and Extra Expense Coverage. A copy of the Policy effective May 9, 2017 to May 9, 2020 is attached hereto as "Exhibit A." (*Id.* at p. 26, et seq.)  A copy of the renewal policy

effective May 9, 2020 to May 9, 2023 is also attached hereto as Exhibit B.

74. The Policy is an all-risk policy that provides broad coverage for losses caused by any cause unless expressly excluded.

75. The Policy does not exclude losses from viruses or pandemics. Thus, the all-risk Policy purchased by Plaintiff covers losses caused by viruses, such as COVID-19.

76. The initial applicable Policy effective through May 9, 2020, contains Building and Personal Property Coverage Form (FM 101 04 04) which provides in Section A that Defendant "will pay for direct physical 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss." (Exhibit A, at p. 29).

77. However, the renewal policy effective May 9, 2020 through May 9, 2023 provides in Section A that Defendant "will pay for direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss. (Exhibit B, at p. 28).

78. Under the policy definitions in the initial applicable policy, "Loss means accidental loss or damage." (Exhibit A, at p. 60).

79. The renewal policy effective May 9, 2020 through May 9, 2023 states in the definitions section that "'Loss' means accidental physical loss or accidental physical damage." (Exhibit B, at p. 63).

80. The initial applicable policy further provides that "Covered Cause of Loss means Risks of Direct Physical loss unless the 'loss' is…" excluded or limited in this Coverage Part. (Exhibit A, at p. 31). None of the exclusions or limitations are applicable to Plaintiffs' claims.

81. The policy effective May 9, 2020 through May 9, 2023 provides that "Covered Cause of Loss means direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part. (Exhibit B, at p. 30).

82.   As part of Cincinnati Insurance's Building and Personal Property Coverage Form FM 101 04 04, Defendant provided plaintiff with Coverage Extensions which included coverage for Business Income and Extra Expense losses. (*Id.* at p. 42) Cincinnati Insurance agreed that "We will pay for the actual loss of 'Business Income' and 'Rental Value' you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.' The 'suspension' must be caused by direct physical 'loss' to property at a 'premises' caused by or resulting from any Covered Cause of Loss. (*Id.* at p. 42).

83.   The renewal policy also provides coverage Extensions for Business Income and Extra Expense sustained due to the necessary suspension of operations.   However, the renewal policy provides that "The 'suspension' must be caused by direct 'loss' to property at a 'premises' caused by or resulting from any Covered Cause of Loss" (rather than physical loss) (Exhibit A, at p. 43).

84.   With respect to business interruption losses, "suspension" means: "The slowdown or cessation of your business activities"; and  "That a part or all of the 'premises' is rendered untenantable." (Exhibit A, at p. 61); (Exhibit B, at p. 65).

85.   'Operations' means:  a. Your business activities occurring at the 'premises'; and b. The tenantability of the 'premises', if coverage for 'Business Income' including 'Rental Value' or 'Rental Value' applies.   (Exhibit A, at p. 60); (Exhibit B, at p. 63).

86.   "Business Income" is defined in relevant part under the initial applicable Policy as "Net Income (net profit or loss before income taxes) that would have been earned or incurred" if the suspension of operations had not occurred, and "Continuing normal operating expenses incurred, including payroll." (Exhibit A, at p. 59). The renewal policy contains a similar definition, but refers to "continuing  normal operating expenses sustained" (rather than incurred).

17

(Exhibit B, at p. 63).

87.    CINCINNATI INSURANCE also promised to pay Extra Expense Plaintiffs incur during the period of restoration to "avoid or minimize the 'suspension' of business and to continue 'operations'" at the premises or at temporary or replacement locations. (Exhibit A, at p. 43); (Exhibit B, at p. 44).

88.    "Extra Expense" is defined in relevant part under the initial applicable Policy as "necessary expenses you icur during the 'period of restoration' that you would not have incurred if there had been no direct physical 'loss' to property caused by or resulting from a Covered Cause of Loss." (Exhibit A, at p. 60)

89.    In the renewal policy Extra Expense is defined as necessary expenses that are sustained during the period of restoration "that you would not have sustained if there had been no direct 'loss' (omitting the word physical) to property caused by or resulting from a Covered Cause of Loss." (Exhibit B, at p. 44).

90.    The CINCINNATI INSURANCE Policy also includes "Civil Authority" coverage, in Forms FM 101 04 04 and FA 213 04 04, pursuant to which CINCINNATI INSURANCE promised to "pay for the actual loss of 'Business Income' you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the 'premises,' due to direct physical 'loss' to property other than at the 'premises', caused by or resulting from any Covered Cause of Loss." (Exhibit A, at p. 108) The renewal policy provides similar civil authority coverage when "a Covered Cause of Loss causes damage to property other than covered property." (Exhibit B, at p. 44).

**The Plaintiffs' Losses Due to the Coronavirus Pandemic and the Closure Orders.**

91.    On March 11, 2020, the World Health Organization declared that the emerging

threat from the novel coronavirus—otherwise known as COVID-19—constituted a global pandemic.

92.    Emerging research on the virus and reports from the CDC indicate that the COVID-19 strains physically infect and can stay alive on surfaces for at least 17 days, a characteristic that renders property exposed to the contagion potentially unsafe and dangerous. Other research indicates that the virus may linger on surfaces for up to four weeks in low temperatures.

93.    In response to the pandemic, and the spread of the coronavirus in Chicago and throughout Illinois, Governor Pritzker issued the aforementioned closure orders on March 15, March 20 and April 14,requiring that all bars, restaurants, and other essential businesses, including dental offices other than for emergency procedures, close and discontinue servicing the public.

94.    At the time the aforesaid closure orders were issued Plaintiff was actively engaged in providing dental care, treatment and services from their facilities in Hinsdale, Illinois.

95.    The continuous presence of the coronavirus amongst the public, and on or around Plaintiff's premises, rendered the premises unsafe and unfit for their intended use and therefore, caused both physical loss and physical damage under the Policy.

96.    The Governor's closure orders and the recommendations of the standard-setting American  Dental Association and Illinois State Dental Society were issued in direct response to these dangerous risks and dangerous physical conditions, and prohibited the public, other than for an emergency,  from accessing Plaintiff's dental offices, thereby causing  a deprivation of the use of their business premises, the necessary suspension of their operations, and triggering the Business Income Loss and  Civil Authority coverage under the Policy.

19

97.    The continued enforcement of the aforementioned Governor's closure orders and the recommendations of the national and local professional organizations governing the practice of dentistry were necessitated  by the ongoing and increasing presence of the coronavirus amongst the public, including Plaintiff's patient base, and on and around the Plaintiff's property and premises, thereby causing a direct physical loss to the premises' utility and availability for normal dental office operations.

98.    The aforementioned government orders and dental organization proclamations prohibited the Plaintiff from providing virtually all of their ordinary and customary dental services, and prohibited the public from accessing Plaintiff's offices, thereby causing the necessary suspension of their operations and triggering the Business Income Loss and Civil Authority coverage under the Policy.

99.    As a result of the Closure Orders, and the practice standards implemented by the dental organizations, Plaintiff has suffered substantial Business Income losses and incurred Extra Expense. The covered losses incurred by Plaintiff and owed under the Policy increased every day, and are expected to total substantial sums of money.

100.   Following the implementation of the Closure Orders and rules precluding all but emergency dental care, Plaintiff submitted a claim to CINCINNATI INSURANCE requesting coverage for their business interruption losses promised under the Policy.

101.   On or about July 10,  2020, CINCINNATI INSURANCE denied Plaintiff's claim.

## COUNT IV: DECLARATORY JUDGMENT

102.    Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1 through 25 and 70 through 101 above.

103.   The Policy is an insurance contract under which CINCINNATI INSURANCE

was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy, such as business losses incurred as a result of the government orders and dental practice standards forcing them to close their businesses.

104. Plaintiff has complied with all applicable provisions of the Policy, including payment of the premiums in exchange for coverage under the Policy.

105. CINCINNATI INSURANCE has arbitrarily and without justification refused to reimburse Plaintiff for any losses incurred by Plaintiff in connection with the covered business losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

106. An actual case or controversy exists regarding Plaintiff's rights and CINCINNATI INSURANCE'S obligations under the Policy to reimburse Plaintiff for the full amount of losses incurred by Plaintiff in connection with the necessary suspension of their dental businesses stemming from the COVID-19 pandemic.

107. Pursuant to 28 U.S.C. § 2201, Plaintiffs seek a declaratory judgment from this Court declaring the following:

(a) Plaintiffs' losses incurred in connection with the Closure Orders and related dental organization proclamations and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the Policy;

(b) CINCINNATI INSURANCE has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiffs' losses by issuing blanket coverage denials without conducting a proper claim investigation as required under Illinois law; and

(c) CINCINNATI INSURANCE is obligated to pay Plaintiffs for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders and dental organization proclamations during the applicable indemnity period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT V: BREACH OF CONTRACT

108.   Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1 through 25, 70 through 107 above.

109.   The Policy is an insurance contract under which CINCINNATI INSURANCE was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy, such as business losses incurred as a result of the government orders forcing them to close their businesses.

110.   Plaintiff has complied with all applicable provisions of the Policy, including payment of the premiums in exchange for coverage under the Policy, and yet CINCINNATI INSURANCE has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

111.   By denying coverage for any business losses incurred by Plaintiffs in connection with the Closure Orders and the COVID-19 pandemic, CINCINNATI INSURANCE has breached its coverage obligations under the Policy.

112.   As a result of CINCINNATI INSURANCE's breaches of the Policy, Plaintiff has sustained substantial damages for which CINCINNATI INSURANCE is liable, in an amount to be established at trial.

## COUNT VI: STATUTORY PENALTY FOR BAD FAITH DENIAL OF INSURANCE UNDER 215 ILCS 5/155

113.   Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1 through 25 and 70 through 112 above.

114.   Upon receipt of the Plaintiff's Claims, CINCINNATI INSURANCE denied Plaintiffs' claim without conducting an adequate investigation, let alone a "reasonable investigation based on all available information" as required under Illinois law. See 215 ILCS

5/154.6.

115.   CINCINNATI INSURANCE's denials were unreasonable and constitute "improper claims practices" under Illinois law—namely CINCINNATI INSURANCE's  (1) refusals to pay Plaintiff's claim without conducting a reasonable investigation based on all available information and (2) failure to provide reasonable and accurate explanations of the bases for  its denial. See 215 ILCS 5/154.6 (h), (n).

116.   CINCINNATI INSURANCE has offered no valid reason for its denial and failed to raise any bona fide disputes as to whether the claim was covered by the Policy.

117.   Therefore, pursuant to 215 ILCS 5/155, Plaintiff requests that, in addition to entering a judgment in favor of Plaintiff and against CINCINNATI INSURANCE for the amount owed under the Policy at the time of judgment, the Court enter a judgment in favor of Plaintiff and against CINCINNATI INSURANCE for an amount equal to the greater of: (1) 60% of the amount which the trier of fact finds that Plaintiff is entitled to recover under the Policy, exclusive of costs; and (2) $60,000. See 215 ILCS 5/155.

118.   Plaintiff further requests that the Court enter a judgment in favor of Plaintiff and against CINCINNATI INSURANCE in an amount equal to the attorneys' fees and costs incurred by Plaintiff for the prosecution of this coverage action against CINCINNATI INSURANCE, which amount will be proved at or after trial, pursuant to 215 ILCS 5/155.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully pray that this Court:

1. Enter a declaratory judgment on Counts I and IV of the Complaint in favor of Plaintiffs and against CINCINNATI INSURANCE, declaring as follows:

   (a)   Plaintiffs' losses incurred in connection with the Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic are insured

losses under the Policy;

(b) CINCINNATI INSURANCE has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiffs' losses by issuing a blanket denial without conducting a claim investigation as required under Illinois law; and

(c) CINCINNATI INSURANCE is obligated to pay Plaintiffs for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders during the four-week indemnity period and the necessary interruption of its business stemming from the COVID-19 pandemic.

2.     Enter a judgment on Counts II and V of the Complaint in favor of Plaintiffs and against CINCINNATI INSURANCE and award damages for breach of contract in an amount to be proven at trial;

3.     Enter a judgment on Counts III and VI of the Complaint in favor of Plaintiffs and against Society Insurance in the amount equal to the greater of (1) 60% of the amount which the trier of fact finds that Plaintiffs are entitled to recover under the Policy, exclusive of costs; and (2) $60,000;

4.     Enter a judgment in favor of Plaintiffs and against CINCINNATI INSURANCE in an amount equal to all attorneys' fees and related costs incurred for the prosecution of this coverage action against CINCINNATI INSURANCE, pursuant to 215 ILCS 5/155, which amount is to be established at the conclusion of this action;

5.     Award to Plaintiffs and against CINCINNATI INSURANCE prejudgment interest, to be calculated according to law, to compensate Plaintiffs for the loss of use of funds caused by CINCINNATI INSURANCE'S wrongful refusal to pay Plaintiffs for the full amount of costs incurred in connection with Plaintiffs' claims.

6.     Award Plaintiffs such other, further, and additional relief as this Court deems just and appropriate.

24

## <u>JURY DEMAND</u>

Plaintiffs hereby demand trial by jury on all issues so triable.

Date: September 1, 2021

Respectfully submitted,

CLIFFORD LAW OFFICES, P.C.

By: <u>/s/ Richard F. Burke, Jr.</u>
      One of the Attorneys for Plaintiffs

Richard F. Burke, Jr.
rfb@cliffordlaw.com
Shannon M. McNulty
smm@cliffordlaw.com
James C. Pullos
jcp@cliffordlaw.com
CLIFFORD LAW OFFICES, P.C.
120 North LaSalle, 36th Floor
Chicago, IL 60602